UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Civil Case No. 3:23-CV-00358(MPS) |
| | : | |
| | : | |
| v. | : | April 13, 2023 |
| | : | |
| CLIFFORD BRODIE | | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION PURSUANT TO
28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

On July 16, 2019, the defendant Clifford Brodie pleaded guilty for the second time to racketeering conspiracy.[1] *See* 3:17-cr-00171-MPS, Docket Entry Numbers ("Dkt. Entry Nos.") 377, 390. On November 11, 2019, Mr. Brodie was sentenced to a total term of imprisonment of 168 months followed by a three-year term of supervised release. *See* Dkt. Entry No. 491. After an unsuccessful appeal and request for compassionate release, Clifford Brodie now moves *pro se* for relief through collateral attack pursuant to § 2255. Specifically, the defendant moves to vacate, set aside or correct his sentence. *See* 3:22-cv-358(MPS), Dkt. Entry No. 1-2. Aside from attacking the substantive reasonableness of his sentence under the guise of ineffective assistance of counsel, and asserting that he did not receive certain discovery materials, Mr. Brodie raises five other arguments. All of these arguments are unavailing. The defendant's petition should be denied.

---

[1] After petitioner's first guilty plea, upon reviewing the plea agreement, transcript, and the parties' briefing, the Court determined that the facts elicited at the plea canvass were not sufficiently detailed so as to support a basis for intent to kill as required under the law for the attempted murders. His plea was subsequently vacated. *See* 3:17-cr-00171-MPS, Dkt Entry No. 335.

I.    **FACTS AND PROCEDURAL HISTORY**

A.    **Offense Conduct**

Clifford Brodie was a member of the Goodrich Street Boys or "GSB," a local street gang

that was formed in approximately 2011 by individuals living on Goodrich Street in New Haven.

*See* Presentence Report ("PSR") ¶ 13.  Mr. Brodie and the other defendants self-identified as

GSB members on Facebook and through videos, pictures and text messages.  PSR ¶ 14.  GSB

members engaged in drug trafficking including distributing marijuana, heroin and cocaine.  PSR

¶ 19.  Law enforcement additionally conducted controlled buys from Milton Westley and

Clifford Brodie and recovered drugs and drug packaging materials at various locations associated

with the defendants.  PSR ¶¶ 23-27.  When pleading guilty, Mr. Brodie agreed that he was

"responsible for the equivalent of at least 20 kilograms, but less than 40 kilograms of converted

drug weight."  PSR ¶ 85.

From at least 2015 through 2017, GSB was fighting Slutwave/Starrblock/R2—an alliance

of other local gangs.  PSR ¶ 13.  The rivalry between the two groups "began over personal issues

and fights over gang territory, but quickly escalated after a number of shootings." PSR ¶ 13.

GSB members and associates shot "rival gang members or those perceived to be disrespectful of

the group."  PSR ¶ 34.  For example, GSB members shot at the house of Brandon Shealy—"a

member of the rival gang West Read Street/R2"—on four occasions.  PSR ¶ 41.  On January 20,

2016, police located eight .22 fired cartridge cases and eight bullet holes in front of Shealy's

residence.  PSR ¶ 42.  Facebook evidence linked Clifford Brodie to this shooting.  *See* PSR ¶ 43.

Later that same day, officers returned to the location for a second shooting and recovered "[f]ive

.22 fired cartridges cases."  PSR ¶ 44.  Three days later, on January 23, 2016, officers returned to

this location for a third time and "collected 9mm spent cases from the residence and from the

street in front of the residence."  PSR ¶¶ 46-47.  "These cases were linked to the 9mm Ruger found in Sedale Pervis' house with DNA profiles on the firearm that matched those of Milton Westley and Sedale Pervis."  PSR ¶ 47.  In addition, Facebook evidence linked Mr. Brodie and Mr. Westley to this third shooting. See PSR ¶¶ 44-45.

On February 6, 2016, Clifford Brodie and another GSB member shot Damien Smith "multiple times in the back."  PSR ¶¶ 50-51.  Smith had been with "other Slutwave members." PSR ¶ 450.  A witness identified Mr. Brodie as one of the shooters.  *See* PSR ¶ 51.  Officers recovered "four fired cartridge cases from a .380 handgun and nine fired cartridge cases from a 9mm handgun," which were "linked to" the two firearms recovered from Mr. Pervis.  PSR ¶ 52.

On March 13, 2016, Clifford Brodie and Milton Westley "had gotten into fights with Slutwave members."  PSR ¶ 55.  Later that day, two GSB associates shot Damion Phillips (a Slutwave member) in the leg and the shoulder.  *See* PSR ¶¶ 55-61.  "Three .22 caliber shell cases were recovered from the crime scene[]" and they "matched to the .22 that was used to fire at Shealy's house in January."  PSR ¶ 56.  Facebook evidence and text messages further corroborated GSB's responsibility for shooting Mr. Phillips.  *See* PSR ¶¶ 58-61.

Finally, Marquis Freeman had been a GSB target since 2015 when Clifford Brodie decided that Mr. Freeman had been "disrespectful of him."  PSR ¶ 69.  In January 2016, a GSB associate—who was with Milton Westley—shot at Mr. Freeman.  *See* PSR ¶¶ 70-71.  On another occasion, individuals in a car that belonged to Sedale Pervis shot at Mr. Freeman.  *See* PSR ¶ 72. On May 27, 2016, Marquis Freeman and Terrence Lee were walking "when they were ambushed."  PSR ¶ 68.  Milton Westley shot Marquis Freeman in the stomach and, after Mr. Freeman collapsed to the ground, Mr. Westley "stood over his prone body and fired at him execution-style." PSR ¶¶ 68, 73.  As for Terrence Lee, Mr. Westley aimed at his face, but Mr.

3

Lee "held out his hand to stop the bullet." PSR ¶ 74. As Mr. Lee fled "from the scene," he "was almost hit by a red four-door car (driven by Clifford Brodie), which swerved to hit him." PSR ¶ 74. Officers "collected eleven fired 9mm cartridge casings and four fired .380 mm cartridge casings," which "matched the casings test fired" from the two firearms recovered from Pervis. PSR ¶ 75. Facebook evidence and the location of their cell phones connected Milton Westley and Clifford Brodie to this shooting. *See* PSR ¶¶ 77-78.

    **B.**    <u>**Plea and Sentencing**</u>

As previously noted, on July 16, 2019, Mr. Brodie pleaded guilty to racketeering conspiracy. *See* 3:17-cr-00171-MPS, Dkt. Entry Nos. 377, 390. The racketeering conspiracy covered activities that Mr. Brodie and his co-conspirators had engaged in from 2013 until August 3, 2017. *Id*. at Dkt. Entry 1. In the written plea agreement, Clifford Brodie admitted his involvement in two predicate racketeering acts: the GSB drug trafficking conspiracy and the attempted murders of Marquis Freeman and Terrence Lee. *See* 3:17-cr-00171-MPS, Dkt. Entry No. 377. The plea agreement calculated a Guidelines range of imprisonment of 97-121 months. *See* 3:17-cr-00171-MPS, Dkt. Entry No. 377 at 6.

At the change of plea proceeding, the Government explained that Clifford Brodie "intentionally distributed, along with other members of GSB, including Mr. Belle and Mr. Westley, cocaine base and heroin." *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 35. The Government also put on evidence of Mr. Brodie's attempted murder of Mr. Freeman with other GSB members. "On May 27, 2016, at approximately 12:39 a.m., an attempt—an intentional attempt was made to kill Mr. Freeman and Mr. Terrence Lee, who was with him." *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 36. Mr. Brodie's "phone records show[ed] that he was—that he was present in the location" of the attempted murders. *See* 3:17-cr-00171-MPS, Dkt. Entry

No. 390 at 37.

Clifford Brodie admitted his involvement "with other members of GSB in selling cocaine and heroin." *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 45.  Mr. Brodie further admitted that Marquis Freeman was disrespectful to him, and that the intent was to kill him.  *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 48.  Although there was no "specific beef with Mr. Lee," Clifford Brodie admitted that he was driving the car and that he drove directly at Mr. Lee, knowing "that if the car hit him, he would either die or be seriously injured."  *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 51.  After these admissions, and after being fully advised of his rights and the crime to which he was pleading guilty as discussed in more detail below, Clifford Brodie pleaded guilty to the RICO conspiracy.  *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 55.

At sentencing, the Court reviewed some of the GSB shootings.  First, it determined that the shootings of Marquis Freeman and Terrence Lee constituted attempted murders attributable to Mr. Brodie.  *See* Dkt Entry No. 524 at 20-22.  Second, the Court determined that the shootings of Brandon Shealy's house, the shooting of Damien Smith, and the shooting of James and Donald Harris constituted aggravated assaults and thus were not predicate acts for racketeering purposes but could be considered in the section 3553(a) analysis.  *See* Dkt Entry No. 524 at 22-26.  The Court did not consider additional shootings to be attributable to Mr. Brodie, but did consider his conduct "related to these acts"—"such as encouraging violence on Facebook or through text messages"—in its section 3553(a) analysis.  *See* Dkt Entry No. 524 at 20-26.  Based on these determinations, the Court calculated a Guidelines range of imprisonment of 97-121 months.  The Court further considered the relevant section 3553(a) factors and ultimately determined that a sentence of 168 months followed by three years of supervised

release was appropriate.  *See* 3:17-cr-00171-MPS, Dkt. Entry No. 491.

Clifford Brodie subsequently appealed the substantive reasonableness of his sentence.
*See* 3:17-cr-00171-MPS, Dkt. Entry No. 495.  That appeal was denied. *See, United States v.
Brodie,* 19-3826, Dkt. Entry No. 230.  Motions for compassionate release were also denied.  *See*
3:17-cr-00171-MPS, Dkt. Entry Nos. 553, 563, 572.  The petitioner recently requested his
discovery materials, *see* 3:17-cr-00171-MPS, Dkt. Entry No. 577—much of which Government
counsel sent to him—and this petition followed.  *See* 3:23-cv-00358-MPS, Dkt. Entry No. 1.

### C.   The Present § 2255 Motion

On March 21, 2022, the defendant filed a motion pursuant to 28 U.S.C. § 2255 to vacate,
set aside, or correct his sentence.  *See* 3:23-cv-358(MPS), Dkt Entry No. 1-2.  In this petition,
Clifford Brodie argues that his counsel's performance was so defective that he was deprived of
the rights guaranteed to him by the Sixth Amendment; that he pleaded guilty without
understanding the nature of the charges against him and the consequences of pleading guilty; and
that the prosecution did not disclose medical records and ballistics evidence related to the
Marquis Freeman and Terrence Lee shootings that were purportedly favorable to Mr. Brodie.  *Id.*
at 5-7.  As discussed in more detail below, aside from challenging the substantive reasonableness
of his sentence and asserting that he did not receive discovery, the defendant also raises five
specific arguments.  Each of these arguments is unavailing and this petition should be denied.

## II.   APPLICABLE LAW

### A.   Collateral Relief under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 authorizes a federal prisoner to move to vacate his judgment of
conviction "upon the ground that the sentence was imposed in violation of [the Constitution], or
that the court was without jurisdiction to impose such sentence, or that the sentence was in

excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28

U.S.C. § 2255(a).  But "'[b]ecause collateral challenges are in tension with the society's strong

interest in the finality of criminal convictions, the courts have established rules that make it more

difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'"  *Zayac*

*v. United States*, No. 3:16-CV-952 (JCH), 2018 WL 310038, at \*3 (D. Conn. Jan. 5, 2018)

(citing *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)).  The Court "shall vacate

and set the judgment aside" only if the Court finds that "there has been such a denial or

infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

collateral attack."  *Id.* § 2255(b).

Relief under § 2255 is narrowly limited out of "'respect for the finality of criminal

sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years

after the underlying events took place.'"  *Davis v. United State*s, No. 13-CR-986, 2019 WL

1533073 at \*2 (S.D.N.Y. Apr. 9, 2019) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.

1995)).  A § 2255 motion is not a substitute for a direct appeal.  *See, e.g., United States v. Frady*,

456 U.S. 152, 164 (1982) ("[o]nce the defendant's chance to appeal has been waived or

exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when,

as here, he already has had a fair opportunity to present his federal claims to a federal forum").

In fact, a defendant is procedurally barred from raising any issues on a § 2255 motion that could

have been raised on appeal, unless he can demonstrate either: (1) "cause" for failing to bring a

direct appeal and "prejudice" arising from the failure; or (2) that he is "actually innocent" of the

offense of conviction.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

With regards to claims of ineffective assistance of counsel, the Supreme Court has

devised a two-part test.  Pursuant to *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "[a]

defendant must demonstrate '(1) that counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (2) that counsel's ineffectiveness prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Habbas*, 527 F.3d 266, 273 (2d Cir. 2008) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)). "Counsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).  Instead, the petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

With respect to the first prong—deficient performance—the inquiry is "highly deferential" and requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  A defendant must show that counsel's performance fell below an "objective standard of reasonableness" measured under "prevailing professional norms." *See Strickland*, 466 U.S. at 687-688.  The petitioner seeking relief must overcome the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *Id.*

With regard to the second prong—prejudice—a reasonable probability of a different outcome means a "probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S at 694.  In other words, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*  Counsel is "strongly presumed to have rendered adequate

8

assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted); *see also Strickland*, 466 U.S. at 693 ("[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."). Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective," *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993), and Second Circuit precedent generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

Finally, although a petitioner must satisfy both prongs to obtain relief, the Supreme Court has stated that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697; *see also Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir. 1997) (declining to address the first prong of *Strickland* on the ground that the defendant could not satisfy the prejudice prong).

To succeed on a § 2255 petition, a defendant must show that he is entitled to relief by a preponderance of the evidence. *See Skaftouros v. United States*, 158 (2d Cir. 2011).

**B.**     **The District Court May Deny a Section 2255 Petition Without a Hearing**

The filing of a motion pursuant to § 2255 "does not automatically entitle the movant to a hearing." *Gonzalez*, 722 F.3d at 130-31. To be entitled to a hearing, then, the movant "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131. As the Second Circuit held, Section 2255 "does not strip the district courts of all common sense," and "[i]t is within the district court's discretion to determine whether a hearing is warranted." *Pham v. United States*, 317 F.3d 178, 184, 192 (2d Cir. 2003) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)) (holding that even where factual issues may exist, Second Circuit precedent permits a "middle road" of deciding disputed facts on the basis of written submissions). Thus, "[w]here the allegations [in a petitioner's Section 2255 motion] are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous," a hearing is unwarranted. *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970).

**III.**     **DISCUSSION**[2]

The defendant's petition should be denied without a hearing because, first, many of his claims regarding the reasonableness of his sentence were already raised and rejected on direct appeal and, second, because all of his claims are insufficient as a matter of law to warrant a hearing.

_____

[2] Brodie waived his right in the Plea Agreement, to "appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241." *See* Dkt Entry No. 377 at 6. "A knowing and voluntary waiver of the right to litigate pursuant to [§] 2255 is . . . valid and enforceable." *Abramo v. United States*, No. 12-CV-01803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014); *see also Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (citing *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000)). However, because the defendant structures his claims to allege ineffective assistance of counsel, which was not barred by the waiver, the Government does not rely on the waiver herein.

A. **Brodie should not be able to reargue claims already raised on direct appeal.**

As an initial matter, Mr. Brodie's "claim of ineffective assistance of counsel appears to be a backdoor attempt to attack his sentence." *United States v. Marte*, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011). The defendant argues that his sentence was too high and so his counselor was ineffective. *See* 3:23cv58(MPS), Dkt Entry No. 1-2 at 15-16 (asserting that Court did not follow the "Parsimony Clause, which mandates that sentencing courts 'impose a sentence sufficient but not greater than necessary to comply with' the factors set forth in 18 U.S.C. § 3553(a)(2)").[3] The defendant further outlines exactly why he believes that his sentence was excessive, *see* 3:23cv58(MPS), Dkt Entry No. 1-2 at 27-30, and details the various section 3553(a) factors for which he thought the Court should have attributed more weight, including the violence he was exposed to, his anxiety and other mental health issues, *see* 3:23cv58(MPS), Dkt Entry No. 1-2 at 31-38. Finally, Mr. Brodie emphasizes that his counsel did not do enough to point out the mitigating factors from the case and this led to a disparity between the defendants. *See* 3:23cv58(MPS), Dkt Entry No. 1-2 at 19, 20-21, 45-46; *see also* 3:23cv58(MPS), Dkt Entry No. 1-2 at 16 ("The sentence imposed by the district court was 168 months, which proves my counselor to be ineffective.")

But attacking the substantive reasonableness of his sentence is exactly what Mr. Brodie did on direct appeal. *See United States v. Brodie,* 19-3826 (2d. Cir.), Dkt Entry No. 68 at 16-23 (arguing that 168-month sentence was substantively unreasonable). That argument was rejected by the Second Circuit. *Id.*, Dkt. Entry No. 202 at 9 ("Brodie's substantive reasonableness challenge to his sentence is without merit").

---

[3] It appears that Clifford Brodie's handwritten pages of arguments were copied twice and filed together. The Government only cites to the first time that the pages appear.

Allowing the defendant to refashion his collateral challenge to the length of his sentence as an ineffective assistance of counsel claim is inconsistent with the Second Circuit's admonition that section 2255 petitions not be used to relitigate issues that were considered on direct appeal. *See*, *e.g.*, *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir.1992) ("'[s]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.'"). Mr. Brodie should not be permitted the proverbial "second bite" at an issue that was already considered and decided by the Court of Appeals. Accordingly, these claims should be rejected by this Court.

    **B. <u>Clifford Brodie's counsel was not ineffective, and the record indicates that Mr. Brodie fully understand the charges against him and the consequences of pleading guilty.</u>**

Aside from attacking the substantive reasonableness of his sentence and claiming that he did not receive certain discovery, Clifford Brodie argues generally that his counsel's deficiencies deprived him of a fair trial and that his guilty plea "was not knowing and voluntary" because "the advice he received from [his] counselor" was not within acceptable standards. *See* 3:23cv358(MPS), Dkt. Entry No. 1-2 at 10. But the record demonstrates that he fully understood the charges against him and the consequences of pleading guilty.

The defendant's main arguments, liberally construed, are best summarized as follows:

- *First, his attorney did not thoroughly investigate the case.* Mr. Brodie contends that there was a "less than complete investigation" and that he was not provided with all "plausible options and strategies pertaining to [his] offenses." *See* 3:23cv358(MPS), Dkt. Entry No. 1-2 at 11.

- *Second, Mr. Brodie argues that there was not a factual basis for the plea.* Although the defendant does not appear to be making a claim of actual innocence,

Mr. Brodie asserts that the evidence indicates that he was not guilty of some of the criminal activity attributable to him.  *See* 3:23cv58(MPS), Dkt Entry No. 1-2 at 24-25, 50-54.

- Third, Mr. Brodie argues that he did not realize that he could be held accountable for relevant conduct and should have had a *Fatico* hearing.  The defendant argues that he did not "possess the understanding that my admission of guilt to acts within a plea agreement of guilty would equate to relevant conduct that could and would be the basis for the courts to give me a substantial upward departure when imposing my term of imprisonment."  *See* 3:23cv358(MPS), Dkt. Entry No. 1-2 at 14-15; Dkt Entry No. 1-2 at 19, 23-25.

- *Fourth, the defendant argues that he was coerced into pleading guilty.* Mr. Brodie also argues that he was "intimidate[d] and coerce[d]" not to go to trial because his counsel warned him of how much time in prison he was facing and recommended that he accept three different plea agreements.  *See* 3:23cv58(MPS), Dkt Entry No. 1-2 at 18.

- *Fifth, the defendant asserts that the Court was biased against him*.  Finally, the defendant contends that the Court was biased against him and that his counsel was ineffective for not objecting to certain statements about him made by the Court. *See* 3:23cv58(MPS), Dkt Entry No. 1-2 at 38.

Each of these broad claims is meritless and is discussed in turn.

When addressing an ineffective assistance claim, as discussed above, the Court should apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "[T]hat is, the defendant must overcome

13

the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'" *Roberts v. United States*, No. 13-CV-0653 (DLI), 2018 WL 1582288, at *3 (E.D.N.Y. Mar. 30, 2018) (quoting *Strickland*, 446 U.S. at 689).  "[F]ailure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).  In all cases, the Court must "be watchful to eliminate the distorting effects of hindsight." *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (citation and internal quotation marks omitted).  Finally, a habeas petitioner bringing a claim in the sentencing context "must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzales v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  Here, the defendant cannot succeed on either prong.

1. **Lack of Investigation**

As to Mr. Brodie's first argument that the investigation by his counsel could have been more fulsome, there is no basis for this claim.  To succeed on such a claim, a petitioner must make more than vague allegations.  *See, e.g., Brancaccio v. United States*, No. 14cv1538 RMB, 2015 WL 4104847, at *4 (S.D.N.Y. July 2, 2015) ("To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation.") (citing *Medrano v. United States*, No. 13cv1604, 2015 WL 848551, at *22 (S.D.N.Y. Feb. 27, 2015))).  Mr. Brodie does not provide any specific details as to what his counsel failed to investigate or how further investigation would have, in any way, impacted the outcome of the case here.  He asserts that he should have been allowed to claim ownership of his Facebook account and that would have resulted in the granting of his motion to suppress, but does not explain how if he had standing, he would have necessarily succeeded in the motion to suppress.  *See* 3:23cv58(MPS), Dkt Entry No. 1-2 at 19, 20-21.  Moreover, other than this

14

general assertion, the defendant does not explain how this would have changed his decision to plead or had any impact on the Court's ultimate sentence.

Clifford Brodie further asserts that he should have had a *Fatico* hearing and that his Sentencing Guidelines range would have been different if he had, *see* 3:23cv58(MPS), Dkt Entry No. 1-2 at 26, but again there is no basis in the record to support this claim. Without more specific allegations or citations to the record, Mr. Brodie's claims regarding his counsel ineffectiveness due to lack of investigation should be dismissed. S*ee, e.g., Guerrero v. United States*, No. 1:07-CR-0248-GHW, 2017 WL 1435743, at *9 (S.D.N.Y. Apr. 20, 2017), *dismissed*, No. 17-2094, 2018 WL 2453436 (2d Cir. Jan. 2, 2018) ("Mr. Guerrero does not identify any specific facts that could have been discerned from further investigation that would have aided in his defense.")

### 2. Factual Basis for the Plea

Similarly, Mr. Brodie's counsel was not ineffective because there was more than a sufficient factual basis for the plea. Rule 11 "does not require the district court to weigh any evidence or predict what a jury would do with the case." *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998). The rule only "requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Magana*, 147 F. App'x 200, 201 (2d Cir. 2005) (quoting *United States v. Maher, 1*08 F.3d 1513, 1524 (2d Cir. 1997) ("Rule 11[(b)(3)] requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty[.]"). Indeed, "[t]he Rule 'does not specify that any particular type of inquiry be made. . . .An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case." *Maher*, 108 F.3d at

1524. "[S]o long as the facts are placed on the record at the time of the plea, 'the district court, in determining whether there was a factual basis for the plea, is free to rely on any facts at its disposal . . .' "*Id.* at 1524-25 (quoting *Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1975)).

At the change of plea, the Government outlined all of the evidence that it would introduce at a trial against Mr. Brodie.  *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 34-40.  Mr. Brodie further specifically admitted his own criminal conduct including answering specific questions raised by the Court.  This included admitting that he was part of the GSB; admitting inculpatory information about the enterprise and its gang rivalries; admitting his involvement in narcotics trafficking; and admitting that he was the driver of the vehicle that attempted to kill Mr. Lee and that the act was committed because Mr. Freeman had been disrespectful and was undertaken on behalf of the gang.  *See* 3:17-cr-00171-MPS, Dkt. Entry No. 390 at 34-40-52.  There was a more than sufficient factual basis here for the Court to find Mr. Brodie guilty.  This claim should also be rejected.

### 3. **Relevant Conduct Attributable to Mr. Brodie**

Counsel for Mr. Brodie further was not ineffective because the record demonstrates that Mr. Brodie was fully aware that relevant conduct could be attributable to him at sentencing. When a defendant "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them."  *Padilla v. Keane*, 331 F.Supp.2d 209, 217 (S.D.N.Y. 2004) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[T]he representations of the defendant at [a plea colloquy]  . . . constitute a formidable barrier in any subsequent collateral proceedings"); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that

16

simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea").

   Mr. Brodie's argument that he did not know that the Court could consider conduct to which he did not specifically plead guilty in determining the appropriate sentence is simply not supported by the record at the change of plea and sentencing.  *See* Dkt. Entry No. 390 at 26-27 (Court explaining that it "can take into account all of the conduct related to the other counts, if there is any, when I sentence you as to Count 1" and any "new related conduct, relevant conduct came to my attention that you weren't aware of -- well, that the Government wasn't aware of -- and it was put in the presentence report, I could consider it and I could, you know, give you a higher sentence than I otherwise might have" and Mr. Brodie indicating that he understood); *Id.* at 27 (THE COURT: "But as to the conduct related to the other counts that the Government says it's going to move to dismiss, I'm going to be considering that conduct under any circumstances. So that's part of this case already. Do you understand? THE DEFENDANT: Yes, I understand"); *Id.* at 29-31 ("after I've determined the relevant facts and determined whether there should be departures from the guidelines range, I'll indicate what I think the appropriate guidelines range is for you" and defendant indicating that he understood).

   Nor was his June 19, 2019 plea hearing the first time Mr. Brodie had heard that the Court could consider conduct to which Mr. Brodie specifically allocated.  On September 26, 2018, Mr. Brodie appeared before this Court and entered a guilty plea to Counts 1 and 6 of the Indictment. *See* Dkt. Entry 219.  At that time, the Court explained. "I find the facts relevant to sentencing using a standard of proof that's called the preponderance of the evidence. Now that's maybe just lawyer talk to you, but the point I want to make to you is that that standard is a lower standard of

proof than the beyond a reasonable doubt standard that would apply at a criminal trial." *Id*. at

35.  This Court then want to clarify:

> After I've decided on what I think the relevant facts are for purposes of
> sentencing, I'll indicate what I think the correct sentencing range is for you under
> the Sentencing Guidelines and whether I think any departures are appropriate.
> And I'll, of course, consider that range but, as I said, I'm not bound by it. At the
> end of the day, my job at sentencing is to impose a sentence that takes account not
> only of the Guidelines, but also of all of the factors that are listed in the law that
> governs federal sentencing which is Section 3553(a) of Title 18 of the United
> States Code. What are those factors? Those factors include things like: Your
> background and characteristics; The nature and circumstances of this crime; The
> purposes of a criminal sentence; Disparities. That is to say, the need to avoid – the
> need to treat defendants who committed similar crimes and have similar records
> in a similar way; and Restitution and other things, as well as another factor as I
> mentioned before is the Guideline. I have to consider all of those factors in
> deciding on a sentence here. At the end of the day with regard to the Guidelines, I
> could give you a sentence that falls within the Guidelines range or outside the
> Guidelines range. Either way, you will have no right to withdraw your guilty plea.

Dkt. Entry 291, at 36.  This Court asked Mr. Brodie if he "underst[oo]d what I said about my

obligation to consider all of those facts in that law that I mentioned?," to which Mr. Brodie

replied, "Yes." *Id.* at 38.  The Court then asked Mr. Brodie if he had any questions about what

the Court had said and Mr. Brodie replied, "No." *Id.*  In other words, Mr. Brodie knew full well

prior to his 2019 guilty plea that the Court could determine the facts, even facts to which Mr.

Brodie had not pled guilty. That the Court vacated his guilty plea for other reasons and Mr.

Brodie nonetheless sought to plead guilty again, after once more being advised of the facts the

Court could take into account, significantly undermines his claim that he was unaware that the

Court could consider facts beyond his own allocution.

Finally, at sentencing, after a Presentence Report had been prepared that included this

relevant conduct, the Court asked if Mr. Brodie and his attorney had read and reviewed the report

and the defendant indicated that he had, and his counsel indicated that he had no additional

factual objections. *See* Dkt. Entry No. 524 at 10.  The defendant did not seek to withdraw his

guilty plea at that time or raise any issue.  There is no basis for finding that the defendant was not aware that the relevant conduct could be taken into account when the district court was determining the appropriate sentence.

    **4**.    **No Coercion to plead guilty**

    There is also no merit to Mr. Brodie's claim that he was coerced into pleading guilty.  *See* 3:23cv58(MPS), Dkt Entry No. 1-2 ("Not only did my counsel intimidate and coerce me not to go to trial . . . but he also intimidated and coerced me to take multiple bad plea agreements").

    A "strong presumption of verity" attaches to admissions of guilt at a plea allocution. *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir.1992).  Without more, a defendant's statements at the plea colloquy should be relied upon.  *See, e.g., Rosenberger v. United States*, 133 F. App'x 799, 801 (2d Cir. 2005) (Defendant "has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty. Moreover, the plea allocution indicates that [defendant's] guilty plea . . .was knowing and voluntary."); *United States v. Davis*, 48 Fed. Appx. 809, 811-12 (2d Cir.2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with the advice of counsel . . . Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence."); *Gomez v. Duncan*, 02 Civ. 0846, 2004 WL 119360 at *19 (S.D.N.Y. Jan. 27, 204) ("This Court may credit [petitioner's] statements at the plea allocution— that his guilty plea was voluntary and not the result of any threats or promises—over his later allegations of coercion.")

Here, Clifford Brodie was specifically asked on multiple occasions if he wanted to plead guilty and whether he was being coerced in any way and he repeatedly answered in the negative. *See* Dkt Entry No. 390 at 22 ("Finally, Mr. Brodie's acknowledging, by signing this agreement, that no other promises, agreements, or conditions have been entered into except set forth in this plea agreement."); *Id.* at 24-25 ("THE COURT: Other than the promises that are contained in that written agreement, has anyone else made any other promises to you that have caused you to plead guilty? THE DEFENDANT: No, Your Honor. THE COURT: Has anyone made any threats against you to get you to plead guilty? THE DEFENDANT: No. THE COURT: Is anyone forcing you to plead guilty? THE DEFENDANT: No.")

Moreover, as noted above, Mr. Brodie's 2019 guilty plea was not his first attempt to plead guilty to the RICO conspiracy charge.  In September 2018, Mr. Brodie told the Court that he had not been coerced.  *See* Dkt. Entry No. 219 at 27 ("Has anyone threatened you to get you to plead guilty? THE DEFENDANT: No. THE COURT: Is anyone forcing you in any way to plead guilty? THE DEFENDANT: No").   Having twice acknowledged to the Court that he wanted to plead guilty without any force or compulsion, Mr. Brodie's recent assertion of coercion should be dismissed out of hand.

Mr. Brodie's responses under oath on the record indicate that he was not coerced into pleading guilty and likely received reasonable advice considering the charges that he faced.  This claim should also be dismissed.

5.     **Court did not exhibit any bias**

Finally, there is no basis for finding the Court was, in any way, biased against Mr. Brodie or that his counsel was somehow ineffective for not objecting to the Court's statements or raising that purported bias.   Under 28 U.S.C. § 455, a federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," in which "he has a personal bias or prejudice concerning a party," or in which he has "personal knowledge of disputed evidentiary facts concerning the proceeding." But "[r]epeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice."  *Maret v. United States*, 332 F. Supp. 324, 326 (E.D. Mo. 1971); *see also United States v. Shibley*, 112 F.Supp. 734, 738 (S.D. Cal. 1953).  The Second Circuit has explained that "(a)ny opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal 'bias and prejudice' required to disqualify a judge under the statute."  *Mirra v. United States*, 379 F.2d 782, 787-88 (2d Cir. 1967).

Here, there is no personal bias that the defendant can point to, or opinion articulated, for which his counsel was ineffective for not objecting.  The Court's comments about the defendant's celebration and incitement of violence were supported by the record and do not indicate any sort of personal bias towards Mr. Brodie.  Such vague and conclusory allegations are not sufficient.  *See, e.g., Carter v. McKoy*, No. 09cv1030 NRB, 2010 WL 3290989, at *7 (S.D.N.Y. Aug. 9, 2010) ("Vague and conclusory allegations are not sufficient to demonstrate either that counsel was ineffective or that the petitioner suffered actual prejudice.")  This claim should also fail.

**C.      The Government did not fail to disclose evidence favorable to the defendant.**

Finally, Clifford Brodie makes the blanket assertion that "the Prosecution failed to disclose medical records and ballistics evidence from the Marquis Freeman and Terrence Lee shooting" that would have been favorable to his defense.  *See* 3:23-cv-358(MPS), Dkt Entry No. 12 at 5-7.  However, this argument is not elaborated upon in any detail in the papers nor is there any basis for finding any merit to it.  The discovery in this case was voluminous, it included ballistics evidence, and it was provided to the defendant far in advance of him pleading guilty.  There were also extensive discovery materials provided regarding the attempted murder of Mr. Freeman and Mr. Lee and the extent of their injuries.  As indicated above, vague and conclusory allegations cannot support a claim of ineffective assistance of counsel.

All of the defendant's claims are meritless.  The defendant has shown neither that defense counsel's performance was so unreasonable under prevailing professional norms that he was not functioning as the counsel guaranteed by the Sixth Amendment nor that his counsel's ineffectiveness prejudiced the defendant such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Habbas*, 527 F.3d at 273.  Further, the defendant has not met the standard required for an evidentiary hearing.  This petition should be denied without a further hearing.

**<u>CONCLUSION</u>**

For these reasons, the Government respectfully requests that the Court deny the

defendant's § 2255 motion.

Respectfully submitted,
VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/Jocelyn Courtney Kaoutzanis*
JOCELYN COURTNEY KAOUTZANIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct30426
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, Connecticut 06510
(203) 821-3700

**<u>CERTIFICATION</u>**

I hereby certify that on <mark>April 13, 2023,</mark> a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


Copies of the foregoing and

- Defendant's PSR
- Plea Transcript
- Plea Agreement
- Sentencing Transcript


Sent to:

Clifford L. Brodie
Inmate No. 25474-014
FCI Ray Brook
Ray Brook, NY 12977


/s/ *Jocelyn Courtney Kaoutzanis*
JOCELYN COURTNEY KAOUTZANIS
ASSISTANT UNITED STATES ATTORNEY