## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| United States of America, |
| *Plaintiff*, |
| v. |
| Clifford Brodie, |
| *Defendant*. |

No. 3:23-CV-00358(MPS)

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Proceeding *pro se*, Clifford Brodie seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons set forth below, I DENY his motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

I assume familiarity with the record in this case and set forth below only a brief summary of the background and the claim. *Brodie v. U.S.A.,* 23-cv-00358-MPS*, U.S.A. v. Westley et. al.* 17-cr-00171-MPS-2.

Brodie is currently incarcerated in Virginia at FCI Petersburg. Federal Inmate Locator, https://www.bop.gov/inmateloc/; Reg. No. 25474-014 (last visited March 17, 2025). Brodie was a member of the Goodrich Street Boys (GSB), a gang operating a drug distribution enterprise in New Haven, Connecticut. *U.S.A. v. Westley et. al.* 17-cr-00171, ECF No. 451 at 5, 7. From 2015 through 2017, GSB was actively fighting other gangs in New Haven to gain more territory. *Id.* at 5. GSB members communicated, made threats and flaunted their membership in the gang on social media applications including FaceBook. *Id.* at 5-6. They shared drug sales, drug customers, "clothes sneakers, food, drugs, females, guns, phones, etc." *Brodie v. U.S.A.,* 23-cv-00358, ECF No. 1-2 at 24. Carrying guns was a status symbol for GSB members. *Westley et. al.*, 17-cr-00171, ECF No. 451 at 9. In the course of operating their drug distribution enterprise, the gang perpetrated multiple shootings including attempts to murder Marquise Freeman and

Terrance Lee on May 27, 2016. *Id.*, ECF No. 451 at 10-11; *Id.,* ECF No. 390 at 52 -53. Brodie

admitted that on May 27, 2016, he was driving around with the understanding that if he saw

Freeman that someone in the car would try to kill him.  *Id.*, ECF No. 390 at 53. He also admitted

that he drove the car at Lee with the understanding, that if the car hit Lee that Lee would either

die or be seriously injured. *Id.,* ECF No. 390 at 51.

On July 16, 2019, Brodie pled guilty to Count One, conspiracy to engage in a pattern of

racketeering activity in violation of 18 U.S.C. § 1962(d).[1] *Id.,* ECF No. 390 at 55. On November

4, 2019, Brodie was sentenced to 168 months of imprisonment. *Id.,* ECF No. 488 at 1. On April

14, 2021, the Court denied Brodie's motion to reduce his sentence. *Id.,* ECF No. 572. On

October 20, 2021, the Court of Appeals affirmed Brodie's judgement of conviction. *United*

*States of America v. Westley (Brodie)*, Case 19-3826, No. 230 (2nd Cir. 2022). On January 20,

2022, Brodie filed a writ for certiorari with the United States Supreme Court. *United States of*

*America v. Westley*, Case 19-3826, No. 316 (2nd Cir. 2022). The Supreme Court denied certiorari

on February 22, 2022. *United States of America v. Westley*, Case 19-3826, No. 318 (2nd Cir.

2022). Under 28 U.S.C. § 2255, Brodie now moves to vacate, set aside or correct his sentence.

Brodie claims that his lawyer rendered constitutionally ineffective assistance because he

made mistakes that stopped him from functioning as counsel as is guaranteed by the Sixth

Amendment. Brodie claims his lawyer's mistakes were (1) not advising him of plausible defense

options because he did not conduct a thorough investigation; ECF No. 1-2 at 10-11; (2) not

advising Brodie how his plea would affect his rights; *id*. at 12; (3) not adequately advising him of

---

[1] On September 17, 2018, Brodie pled guilty to counts 1 and 6 of the indictment. ECF No. 390 at 3. The court reviewed the transcripts of Brodie's change of plea hearing and concluded that the facts admitted during the hearing did not amount to a RICO conspiracy. The court then vacated Brodie's plea as to count 1 and entered a plea of not guilty. On July 16, 2019, Brodie withdrew his guilty plea to count 6 – carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). As noted in the text, Brodie later pled guilty to count one (again), and the court accepted the plea.

possible departure opportunities and failing to argue § 3553 factors; *id*. at 21; (4) intimidating and coercing Brodie into pleading guilty; ECF No. 1-2 at 17; and (5) failing to request a *Fatico* hearing; *id*. at 26.

## II.    LEGAL STANDARDS

### A. Section 2255 Motion[2]

Section 2255 permits collateral challenges to federal convictions. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the Court which imposed the sentence to vacate, set aside or correct the sentence."). But a 2255 movant faces a steep uphill climb. He must show that "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks omitted). Section "2255 review is narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (internal quotation marks omitted). Section 2255 motions cannot be used to "relitigate questions which were raised and considered on direct appeal." *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir.2001) (internal quotation omitted).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *U.S. v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (citing *Strickland v.*

---

[2] Because Bodie is proceeding *pro se*, his motion is held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). And I must liberally construe his papers to raise the strongest arguments that they suggest. *Id*.

*Washington*, 466 U.S. 668, 694 (1984). "[T]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (citation omitted).

## III.    DISCUSSION

### A.    The Timeliness of Brodie's Motion to Vacate, Set Aside, or Correct

In an effort "to prevent undue delays in federal habeas review," the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "imposed a one-year statute of limitations[.]" *Wims v. United States*, 225 F.3d 186, 189 (2d Cir. 2000). Title 28 U.S.C.A. § 2255 states, "[t]he limitation period shall run from the latest of ... the date on which the judgment of conviction becomes final ...." 28 U.S.C.A. § 2555(f)(1). The judgement of conviction becomes final when the Supreme Court "denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. U.S.*, 537 U.S. 522, 527 (2003). In "rare and exceptional circumstance[s]," the one-year period of limitations may be equitably tolled, provided the petitioner can "show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000).

Brodie's conviction became final on February 22, 2022, when the United States Supreme Court denied his writ of certiorari. *United States of America v. Westley (Brodie)*, Case 19-3826, No. 230 (2nd Cir. 2022), cert. denied; *Clay v. U.S.*, 537 U.S. 522, 527 (2003). Brodie had until February 22, 2023, to move for relief under § 2555. 28 U.S.C.A. § 2255(f). Brodie did not file his § 2555 motion to vacate until March 23, 2023. Brodie's motion is untimely. However, the one-year statute of limitations is not a jurisdictional bar and may be equitably tolled if justified by "rare and exceptional circumstance[s]." (citation omitted) *Smith*, 208 F.2d at 17.

Brodie asserts that he has been pursuing his rights diligently and that "extraordinary circumstances stood in [his] way and prevented timely filing." *Brodie v. U.S.A., 23-cv-00358-MPS,* ECF No. 7 at 7. He claims the extraordinary circumstances that justify equitable tolling are: 1) an inability to access his legal materials or a law library until November 2022, (*id*. at 4-5); and 2) his former attorney informing him of the wrong filing deadline. *Id.* at 5. To meet the standard of extraordinary circumstance, Brodie must show that the cause of his delay was both beyond his control and unavoidable even with diligence. *Hizbullahankhamon v. Walker*, 105 F. Supp. 2d 339, 344 (S.D.N.Y. 2000), aff'd, 255 F.3d 65 (2d Cir. 2001). He must demonstrate that the "extraordinary circumstances prevented him from filing his petition on time" and that "acting with reasonable diligence, [he] could have filed on time notwithstanding the extraordinary circumstances." *Hizbullahankhamon v. Walker*, 255 F.3d 65 (2d Cir. 2001).

### 1. Access to Legal Materials and Law Library

Brodie claims he was unable to access his legal materials or a law library until November 2022. ECF No. 7 at 7. He argues that transfers and a lockdown prevented him from accessing his legal materials or a law library. *Id.* Brodie claims that he was housed at SHU between May 30, 2022 and September 1, 2022, then transferred to USP Lewisburg for 23-hour lockdown, until September 15, 2022. *Brodie v. U.S.A., 23-cv-00358-MPS*, ECF No. 7 at 5. He claims the lockdown was an extraordinary circumstance and not an ordinary prison difficulty. *Id.* "[T]he difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, generally do not by themselves qualify as extraordinary circumstances." *Adkins v. Warden*, 585 F. Supp. 2d 286, 296 (D. Conn. 2008), aff'd, 354 F. App'x 564 (2d Cir. 2009).

By itself, the lockdown is not an extraordinary circumstance. Brodie does not argue any circumstances attendant to the lockdown to indicate that it was anything more than what is typically experienced in prison life. Further, the lockdown and associated lack of access to legal materials did not prevent Brodie from timely filing had he been reasonably diligent. Brodie was in lockdown for 15 days out of the one-year limitations period. It is not plausible that but for his 15 days in lockdown, he would have been able to file a timely motion. *See Hizbullahankhamon v. Walker*, 255 F.3d 65, 76 (2nd Cir.2001).

On September 15, 2022, after release from lockdown, Brodie was transferred to FCI Ray Brook and claims he did not receive his legal materials or gain access to a law library until November 2022. *Id*. Inability to access legal materials or a law library is an ordinary inconvenience experienced at some point by most prisoners. *See Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("the usual problems inherent in being incarcerated do not justify equitable tolling."); *Morales v. Bradt*, 2013 WL 600176, at *4 (W.D.N.Y. Feb. 11, 2013) ("lack of access to legal materials or papers does not constitute an extraordinary circumstance that warrants equitable tolling"). In November 2022, when Brodie regained access, he had approximately three months to file this motion to vacate.  Brodie could have reasonably filed his § 2255 motion in three months. *See Harper v. Ercole*, 648 F.3d 132, 138 (2d Cir. 2011) ("A reasonably diligent person could have prepared a petition in the seventy-eight days remaining on the AEDPA limitations period."); *Adkins v. Warden*, 585 F. Supp. 2d 286, 300 (D. Conn. 2008), aff'd, 354 F. App'x 564 (2d Cir. 2009) (Finding that "six and one-half months before the AEDPA one-year limit was due to expire" was sufficient to file motion if Mr. Adkins acted with reasonable diligence.); *Rivera v. United States*, 719 F. Supp. 2d 230, 236 (D. Conn. 2010), aff'd, 448 F. App'x 145 (2d Cir. 2011) (Rivera had "a couple of weeks before his § 2255 motion was

due. Mr. Rivera could have used this time to file an unpolished but timely petition." (internal citation omitted)).

The lockdown also does not comport with the equitable principles of tolling because it was avoidable. Brodie acknowledges that the lockdown was due to his own misconduct; he states that he "left Allenwood FCI on a disciplinary transfer on 9-1-22" and was transferred to "USP Lewisburg on 23-hour lockdown until 9-15-22." *Brodie v. U.S.A., 23-cv-00358-MPS*, ECF No. 7 at 4 - 5. "Even where exceptional circumstances are shown to exist, a habeas petitioner, to obtain equitable tolling of limitations period under Antiterrorism and Effective Death Penalty Act (AEDPA) for filing a habeas corpus petition, still bears the burden of proving that those circumstances, and not his own actions, actually prevented him from filing the petition in a timely manner." *Mason v. Pool*, 554 F. Supp. 2d 391 (W.D.N.Y. 2008), *citing* 28 U.S.C.A. § 2244(d)(1). Equitable principles do not allow Brodie to benefit from his own wrongdoing. Disciplinary lockdown is avoidable, not extraordinary.

Ordinary prison life does not qualify as an extraordinary circumstance but "[t]he intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is extraordinary as a matter of law." *Valverde v. Stinson*; 224 F.3d 129, 133-134 (2nd Cir.2000). Brodie does not claim that his legal materials or access to the law library were intentionally taken or withheld from him. *Brodie v. U.S.A., 23-cv-00358-MPS*, ECF No. 7 at 4-5. Brodie's transfers, lockdown and inability to access legal materials are typical problems experienced in prison life. By themselves, they do not qualify as extraordinary circumstances. They do not fall outside the range of "usual problems inherent in being incarcerated [and] do not justify equitable tolling." *Baldayaque v. U.S.*, 338 F.3d 145, 152 (2d Cir. 2003).

## 2.   Brodie was Informed of the Wrong Filing Deadline

Brodie also claims that being informed of the wrong filing deadline was an extraordinary circumstance that justifies tolling. ECF No. 7 at 5. Brodie submitted two letters addressed to him, from Attorney Boyle. ECF No. 7 at 16, 18. In the letter dated January 13, 2022, Attorney Boyle advised Brodie that the filing deadline was April 6, 2023. ECF No. 7 at 16. In the letter dated February 1, 2023, Attorney Boyle stated that the filing deadline was April 7, 2023 and sent Brodie the forms he needed to file a motion to vacate. ECF No. 7 at 18. Attorney Boyle miscalculated the filing deadline. In both of his letters, he explained that the filing deadline was April 6 (or 7 in the second letter), 2023 because that was "one year from April 6, 2022," the date "your conviction would be deemed final." ECF No. 7 at 16. Attorney Boyle warned Brodie that filing "a petition to the Supreme Court" would affect the date his conviction was deemed final. ECF No. 7 at 17. Unaware that Brodie had filed a writ of certiorari *pro se*, Attorney Boyle mistakenly counted the end of a writ's 90-day filing period as the date when Brodie's conviction would be final. ECF No. 7 at 16. Attorney Boyle overlooked the writ for certiorari that Brodie filed. *U.S. v. Westley*, 19-376-cr, Doc. No. 230 (Jan. 13, 2022), *Pervis v. U.S.*, 19-3826, Doc. No. 235 (Feb. 22, 2022).

To warrant equitable tolling, the circumstances must be extraordinary. "[A]ttorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," but "at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003). In *Baldayaque*, the attorney refused "to do what was requested by his client," "did no legal research on Baldayaque's case" and "never spoke to or met Baldayaque." *Id*. Attorney Boyle's actions may be distinguished because he made himself available to Brodie by mail and

phone, he corresponded with Brodie and conducted research for him. Boyle made a simple miscalculation based on Brodie's failure to tell him about the *pro se* petition. "[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland v. Fla.*, 560 U.S. 631, 651–52 (2010) (omits internal citation).

"[T]he client generally must bear the risk of attorney error." *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (internal quotation marks omitted). Brodie knew the procedural steps he had taken better than Attorney Boyle because Attorney Boyle was not involved in filing the writ. Brodie did not heed Boyle's warning that filing a writ of certiorari would affect the date his conviction was final. If Brodie had been diligent, he could have discovered the actual filing deadline. He could have asked Attorney Boyle about his warning.

Attorney Boyle's miscalculation of the filing deadline did not prevent Brodie from timely filing. Brodie did not show reasonable diligence in discovering the correct filing date or in preparing this motion. The motion to vacate, set aside, or correct sentence is untimely.

### B.    Ineffective Assistance

Even if Brodie had timely filed his motion to vacate, set aside, or correct sentence, his claims would fail on the merits. To demonstrate ineffective assistance of counsel, Brodie must satisfy the two-prong test in *Strickland v. Washington*. *See* 466 U.S. 668, 687. First, Brodie must show that his lawyer's representation fell below an objective standard of reasonableness, as measured by prevailing professional norms and must overcome the strong presumption that his lawyer performed reasonably. *Strickland*, 466 U.S. at 689. Unreasonable performance can invalidate a guilty plea "to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*,

411 F.3d 315, 320 (2d Cir. 2005). In order to establish *Strickland*'s second prong - prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### 1.    Incomplete Investigation

Brodie claims his lawyer was unaware of various defense options because he did not conduct a thorough investigation. ECF No. 1-2 at 10-11. Defense counsel has a duty to investigate "because [the] testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). The duty to investigate requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). "It does not, however, compel defense counsel to investigate comprehensively every lead or possible defense or to scour the globe on the off-chance something will turn up." *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (internal citation omitted). "Reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *U.S. v. Caracappa*, 614 F.3d 30, 47 (2d Cir. 2010) (internal citation omitted). Brodie does not indicate which defense strategies his lawyer allegedly missed. He does not identify or suggest alternate defense strategies that could have been pursued.

Brodie concludes that his lawyer made "errors" and failed to perform a "complete investigation" but does not support these conclusions with facts or claims describing how his lawyer erred or what he failed to investigate.[3] *See* ECF No. 1-2 at 10-11. The general rule is that

---

[3] In his reply to the Government's Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence, Brodie asserts that he was "not just saying [his] counselor was ineffective;" he was "showing how and why he was

"undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong." *Powers v. Lord*, 462 F.Supp.2d 371, 381 (W.D.N.Y. 2006). Brodie has not provided sufficient information or detail to satisfy the first *Strickland* prong.

Brodie asserts that "absent my counselor's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." ECF No. 1-2 at 11. He does not suggest any avenue for how the outcome might have changed. Brodie's claim of a less than complete investigation does not identify his lawyer's asserted error with any specificity or provide any detail as to how different conduct might have changed the result. Brodie's incomplete investigation claim is too vague and conclusory to state a ground for habeas relief under either *Strickland* prong. It is meritless.

### 2.    Failure to Advise

Brodie claims his lawyer's performance was deficient because he did not advise him of plausible defense options. ECF No.1-2 at 11. Brodie asserts that his plea "was not knowing and voluntary because the advice that [he] received from [his] counselor was not within acceptable standards." (internal citation omitted) ECF No. 1-2 at 10. Brodie also asserts that his plea was "not made voluntarily with the understanding of the nature of the charge or the consequences of the plea." ECF No. 1-2 at 6.

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel during plea negotiations. *Farhane v. United States*, 77 F.4th 123, 126 (2d Cir. 2023); *citing Lafler v. Cooper*, 566 U.S. 156, 162 (2012). In regard to the reasonableness of counsel's performance, "counsel must give the [defendant] the benefit of counsel's professional advice"

---

ineffective." ECF No. 7 at 2. He claims that his lawyer "omitted significant and obvious issues" generally but does not specify what the allegedly omitted issues are. Brodie's reply does not clarify matters.

whether to plead guilty, which includes communicating "the terms of the plea offer," the "strengths and weaknesses of the case" and "alternative sentences to which [the defendant] will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (internal quotation marks omitted).

The record reflects that Brodie's lawyer rendered advice sufficient to discharge his duty of effective assistance of counsel during the plea negotiation. At the second change of plea hearing on July 16, 2019, both Brodie and his lawyer represented to the court that they had enough time and information to allow for a meaningful discussion of Brodie's case. *U.S.A. v. Brodie,* 17-cr-171, ECF No. 390 at 9, 10. During allocution, Brodie testified that he understood the nature of the charges against him. *Id.,* ECF No. 390 at 11. Brodie demonstrated that he understood the penalties and charge by asking whether his sentence could be increased above what was described in the plea agreement. *Id.,* ECF No. 390 at 26. I explained "that I can take into account all of the conduct related to the other Counts" when I sentenced him to Count One. *Id.*, ECF No. 390 at 26 – 27. Brodie affirmed that his lawyer explained the maximum penalties, the guidelines and the sentencing factors in Section 3553(a) to him. *Id.,* ECF 390 at 31. Brodie's lawyer corroborated Brodie's representations of understanding by affirming that he had discussed the possible consequences of pleading guilty with Brodie and Brodie acknowledged that he understood the possible consequences. *Id.*, ECF No. 390 at 15.[4]

Brodie also expressed his understanding of the charges and penalties in writing, after reviewing the plea agreement dated July 16, 2019. The plea agreement describes the charge that Brodie pled guilty to, Count One – conspiracy to engage in a pattern of racketeering activity.

---

[4] The colloquy on July 16, 2019, was Brodie's second time listening to the court describe the charges, penalties and plea agreement. It was the second time Brodie affirmed his lawyer's communication with him and his understanding of the case, charges and penalties. The court vacated his first guilty plea taken on September 26, 2018, after finding a legal error. ECF No. 337.

*U.S.A. v. Brodie,* 17-cr-171, ECF No. 377 at 2. The plea agreement lists the elements of the crime and possible penalties. *Id.*, ECF No. 377 at 2-3. The plea agreement describes the recommended plea and the possible penalties. *Id.,* ECF No. 377 at 3, 6. Brodie certified that he read the plea agreement, had ample time to discuss it with his lawyer, understood and accepted it. *Id.*, ECF No. 377 at 11; *Id.,* ECF No. 390 at 16. Brodie's lawyer certified that he explained the plea agreement to Brodie. *Id.,* ECF No. 377 at 11; *Id.,* ECF No. 390 at 17.

Brodie finds himself in the difficult position of trying to discredit his own sworn statements. "[T]he plea or sentencing proceeding record constitutes a formidable barrier to a collateral attack on a guilty plea[.]" *Blackledge v. Allison*, 431 U.S. 63, 64 (1977). Brodie claims his lawyer did not explain that "the government was able to use [his] previous plea agreement as admittance of guilt to offenses that could and would be used against [him] as relevant conduct and grounds for an upward departure." ECF No. 1-2 at 18. Brodie asserts that had he known that the government would be able to use his first plea against him, that he "would not have accepted this plea agreement." ECF No. 1-2 at 18.

In fact, during the first plea hearing on September 26, 2018, Brodie acknowledged that his guilty plea could be used against him and that he "could receive a more severe penalty" as a result of his guilty plea. *U.S.A. v. Brodie,* 17-cr-171, ECF No. 345 at 15.  He indicated that he understood the consequences of his guilty plea, did not have any questions for the court, and did not need time to discuss anything with his attorney. *Id*. at 15-16. Brodie's lawyer corroborated Brodie's professed understanding by representing that he had gone through the consequences of pleading guilty with Brodie. *Id*. at 16. Brodie's claim that his lawyer did not explain how the government was able to use his guilty plea against him for a more severe sentence is without merit.

The U.S. Supreme Court held that "a defendant who pleaded guilty need show … that he would have rejected his plea and gone to trial." *Lee v. United States*, 582 U.S. 357, 381(2017). Brodie claims that his lawyer's "deficient performance prejudiced [his] defense, in that … [it] deprived [him] of a fair trial, a trial whose result is reliable." ECF No. 1-2 at 6. Brodie does not claim that but for a deficient performance he would have elected to go to trial. I cannot infer a desire to go to trial from his statements.

Brodie also claims, "absent my counselor's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." ECF No. 1-2 at 11. He does not indicate what trial result he expects or identify a viable weakness in the Government's case. His statements are conclusory. "With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). Brodie has not offered any basis for assessing how a trial's outcome would have been different. There was no prejudice and as such, analysis of both *Strickland* prongs shows that his ineffective assistance due to a failure to advise claim, is meritless.

### Federal Rule of Criminal Procedure 11:

Brodie also claims that the court violated "rule 11" by allowing him to "plead guilty with no understanding of the nature of his charge or the consequences of the plea." ECF No. 1-2 at 6. "The Second Circuit has adopted a standard of strict adherence to Rule 11." *United States v. Lora*, 895 F.2d 878, 880 (2d Cir.1990). Among other things, Rule 11 requires the court to ensure that the defendant understands the maximum and minimum penalties he faces by pleading guilty. See Fed.R.Crim.P. 11(b)(1)(H-I). As discussed above, the records from both change of plea

hearings demonstrate that the court inquired whether Brodie understood the nature and penalties associated with the charges. *U.S.A. v. Brodie,* 17-cr-171, ECF No. 390 at 9-11; *Id.*, ECF No. 345 at 8-11. The court explained the Sentencing Guidelines to Brodie and inquired whether he understood that he faced a maximum of 20 years imprisonment for count one.[5] *Id.*, ECF No. 345 at 28, 33-36; *Id.*, ECF No. 390 at 24-25, 28-31. Brodie assured the court that he understood. *Id.,* ECF No. 345 at 28; *Id.,* ECF No. 390 at 27. Brodie has not provided any justification to ignore the sworn statements of understanding that he made during the plea allocution. The Court did not have any reason to doubt that Brodie understood the maximum and minimum penalties he faced by pleading guilty.[6]

### 3.    Excessive Sentence and § 3553 Factors

Brodie claims that his 168-month sentence "proves [his attorney] was ineffective." ECF No. 1-2 at 16. He asserts that his lawyer was ineffective because he did not adequately advise Brodie of possible defenses or departure opportunities in his sentence. ECF No. 1-2 at 16. Brodie additionally argues that his 168-month sentence violates the parsimony clause (18 U.S.C. §3553(a)) because probation determined that 97-121 months was the applicable Guidelines range. *Id.* Similarly, on direct appeal, Brodie asserted that his 168-month sentence was unreasonable because it represented a 40% upward variance from the applicable Guidelines range (97-121 months) and was unsupportable because of mitigating factors. *U.S. v. Westley*, 19-3826, Doc. No. 230 at 6. The Second Circuit denied Brodie's direct appeal and found his sentence challenge to be "without merit." *Id.* at 7.

---

[5] The Government moved to dismiss count six (maximum life sentence) after the second change of plea hearing. ECF No. 390 at 27. Count six was included in the first change of plea hearing. ECF No. 345 at 28.
[6] As the Government points out, these and other arguments were also available to Brodie in the direct appeal. They are therefore not cognizable in any event on a section 2255 motion.

"It is well established that a § 2255 motion cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (internal citation omitted). A defendant's § 2255 claim need not be framed exactly as the earlier claim brought on direct appeal so long as both "arguments are premised on the same facts and rest on the same legal ground." *U.S. v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2008). Courts have discretion and may find it appropriate to revisit the earlier decision if presented with "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Williams v. United States*, 712 F. App'x 50, 52 (2d Cir. 2017) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Brodie's current excessive sentence claim is an "altered rearticulation" of the claim denied on direct appeal. *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009). In both claims, Brodie challenges the length of his 168-month sentence. ECF No. 1-2 at 27, *U.S. v. Westley*, 19-3826, Doc. No. 230 at 6. In both claims, he argues that his sentence is excessive because the court did not consider disparities between Brodie and his co-defendants and disregarded or misallocated the weight of individual §3553 factors. ECF No. 1-2 at 33, *U.S. v. Westley*, at 7. The Second Circuit's opinion reiterates that district courts are not required to consider disparities between co-defendants and notes that I had nonetheless considered the issue of disparities among the co-defendants and explained why Brodie's sentence was longer than Westley's sentence. *Id.* at 8.

In its ruling, the Circuit Court emphasized that the "weight afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge." *Id.* at 7, quoting *United States v. Broxmeyer*, 699 F.3d265, 289 (2d Cir. 2012). The Court highlighted my recognition of Brodie's "difficult childhood," which included experiences with poverty,

violence, the death of Brodie's older brother, youth and lack of criminal history. *Id.* The Court
concluded that the 168-month sentence, although it was above the Guidelines, was within my
discretion under the circumstances of the case. *Id*. at 8.

Brodie's excessive sentence claim was dealt with on direct appeal as was his assertion
that this court did not adequately consider the § 3553 factors. Brodie is barred from challenging
it again under § 2255 because his "arguments were considered previously and because there has
been no intervening change in the law" entitling Brodie to revisit claims already litigated. *See
United States v. Sanin*, 252 F.3d 79, 85 (2d Cir. 2001). Brodie is procedurally barred; I do not
need to address his excessive sentence claim or his revised § 3553 factors claim.

### 4.    Brodie's Claim that His Lawyer Intimidated and Coerced Him

The Due Process Clause of the Constitution requires an affirmative showing that an
accused's plea of guilty is entered knowingly and voluntarily before the trial court may accept the
plea. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A plea is voluntary "if it is not the product of
actual or threatened physical harm, mental coercion overbearing the defendant's will, or the
defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312,
1320 (2d Cir. 1988).

Brodie claims that his lawyer intimidated and coerced him to enter a guilty plea by
"stating and reiterating how he thought and felt that going to trial was a bad idea because
[Brodie] was likely to lose[.]" ECF No. 1-2 at 17. "Defense counsel's blunt rendering of an
honest but negative assessment of [defendant's] chances at trial, combined with advice to enter
the plea, [do not] constitute improper behavior or coercion." *United States v. Juncal*, 245 F.3d
166 (2d Cir. 2001). Being tried on the original charges would have exposed Brodie to the
possibility of life in prison. *U.S.A. v. Brodie,* 17-cr-171, ECF No. 220 at 3 (Count Six). After

Count Six was dropped, Brodie still risked a twenty-year term of imprisonment if he went to trial. *Id.,* ECF No. 377 at 2. Reiterating these risks was truthful and not improperly coercive. Presenting each plea offer to Brodie was his lawyer's duty. Brodie's lawyer had a "constitutional duty to give ..[Brodie].. professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. United States*, 317 F.3d 178, 182 (2ⁿᵈ Cir. 2003).

Brodie claims that his lawyer intimidated and coerced him "to take multiple bad plea agreements on the grounds that each one was in [his] best interest[.]" ECF No. 1-2 at 17. Brodie claims that the government's offer of a third plea agreement "contradicted [his] counsel's advice" because his lawyer told him that each of the preceding offers was "the last offer before trial." *Id*. at 18. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Brodie's lawyer did not misinform Brodie by telling him that a particular offer was the last before trial, because at the time of the offer, Brodie's lawyer did not have the knowledge that additional offers would be made. In the moment that each offer was made, telling Brodie that the offer was the best and last before trial was truthful and not coercive. In any event, Brodie does not suggest how any of the statements he attributes to his lawyer made his plea involuntary.

Further, Brodie's rejection of the first plea offer presented by his lawyer contradicts his claim that he was coerced because rejecting the offer shows his lawyer had not overborn his will to think or act independently. ECF No. 1-2 at 16. His coercion claim is also contradicted by his statements at both change of plea hearings. At the second change of plea hearing, Brodie stated under oath that his mind was clear and that he understood what was going on. *U.S.A. v. Brodie,* 17-cr-171, ECF No. 390 at 9. He also stated that no one threatened him or made promises to get him to plead guilty, that he was in fact guilty and that he wanted to change his plea to guilty. *Id.*,

ECF No. 390 at 24. Brodie cannot now contradict these sworn statements without evidence to support his claims.

Brodie has not offered any evidence of intimidation or coercion. His claim is contradicted by his conduct and statements. Brodie's intimidation and coercion claim is without merit.

### 5.    Failure to Join the Fatico hearing

"Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *Kieser v. People of State of N.Y.*, 56 F.3d 16, 18 (2d Cir. 1995)(internal quotation omitted). "The decision to request - or not request - a *Fatico* hearing is a strategic one," *Flores-Mendez v. United States*, No. 17-CV-2767, 2018 WL 357311 at *3 (S.D.N.Y. Jan. 10, 2018), and courts "presume that such a strategy is sound absent a strong showing to the contrary," *United States v. Santiago*, 330 F. App'x 234, 239 (2d Cir. 2009).

Brodie claims that his lawyer was ineffective because he "talked [Brodie] out" of a *Fatico* hearing "for reasons that contradicted his reasoning for avoiding … a *Fatico* hearing." ECF No. 1-2 at 23. "A *Fatico* hearing is a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence." *United States v. Ghailani*, 733 F.3d 29, 55 (2d Cir. 2013)(internal quotation omitted)(quoting *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir. 1991)). It is often "wise … to avoid a *Fatico* hearing at which [the defendant's] prior violent conduct would have been reviewed in detail for the benefit of the district court." *United States v. Santiago*, 330 F. App'x 234, 239 (2d Cir. 2009). Defense "counsel may properly decide to forego a *Fatico* hearing as a matter of strategy." *Id*. (internal citation omitted).

At the time of sentencing, the record included evidence of Brodie's involvement in the shootings of Damien Smith, James Harris, Donald Harris and Brandon Shealy. *U.S.A. v. Brodie,*

17-cr-171, ECF No. 524 at 67. In his Motion to Vacate, Brodie concedes that the government could have presented evidence tying him to the shootings of Terrence Lee, Damien Smith, James Harris and Donald Harris. ECF No. 1-2 at 23-24. Brodie speculates that "crucial and critical facts relevant to [his] offenses" would have disproved evidence which tied him to various shootings. *Id*. Certainly the facts would have been developed further during a *Fatico* hearing but such fact development might have been a double-edged sword, or at least so defense counsel could reasonably have concluded. Additional facts could work against Brodie by making his conduct appear more rather than less dangerous. Dejuan Ward's *Fatico* hearing revealed evidence that allowed the addition of an attempted murder charge. *See United States of America v. Westley*, Case 19-3826, No. 230, 13 (2nd Cir. 2022), *cert. denied*. Brodie acknowledges that his lawyer was concerned a *Fatico* hearing would have presented a risk for him. ECF No. 1-2 at 23. Not participating in a *Fatico* hearing was a strategic decision supported by the evidence.

Even if Brodie's claims satisfied the first *Strickland* prong, the second prong is not satisfied because Brodie has not shown a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kieser v. State of New York*, 56 F.3d 16, 18 (2d Cir.1995). Brodie has not shown that the failure to participate in a *Fatico* hearing caused him prejudice. Brodie has not shown that but for his failure to join the *Fatico* hearing, he would have received a lower sentence. His claims of prejudice consist of speculation. ECF No. 1-2 at 26. This does not establish a "'reasonable probability ... sufficient to undermine confidence in the outcome' of trial, as required under *Strickland*." *Baran v. United States*, 160 F. Supp. 3d 591, 598 (S.D.N.Y. 2016) (citing *Strickland* at 694); *See also Kemp v. New York*, 2009 WL 306258, at *14 (S.D.N.Y. February 9, 2009) ("Vague and speculative allegations ... are insufficient to establish the prejudice required by *Strickland*."). Brodie's claim

that his lawyer was ineffective because he did not participate in a *Fatico* hearing fails both *Strickland* prongs.

### 6.    Bias

Brodie claims that his lawyer's "failure to provide adequate advice and defense caused the court to have a bias against [him]." ECF No. 1-2 at 75. Brodie claims that if his lawyer had not advised against a *Fatico* hearing that the *Fatico* hearing would have shown that the evidence was "insufficient to attribute … the aggravated assaults and the [attempt to murder] Terrence Lee, to [Brodie]." *Id.* Brodie's argument is entirely speculative, and in any event, he cannot rely on these claims to support an inference that the Court was biased. See *Pulglisi v. United States*, 586 F.3d 209, 217-18 (2d Cir. 2009). Brodie has not produced any evidence, such as an affidavit from a potential *Fatico* witness, showing what the witness would have testified to. *See Croney v. Scully*, 1988 WL 69766, at *2 (E.D.N.Y. June 13, 1988), aff'd, 880 F.2d 1318 (2d Cir. 1989)(Courts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the defendant.). His claims about what a *Fatico* hearing would have proven are inconsistent with the evidence available at the time (see above) which indicated that such a hearing would not have benefitted Brodie. In any event, his speculation about a *Fatico* hearing does not provide a basis for a claim of judicial bias.

Brodie also asserts that the Court was biased by his lawyer's failure to object when Brodie thought he should have. *Id.* at 38. This appears to be another ineffective assistance claim, rather than a bias claim, but the claim fails in any event. "[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005)(internal citation and quotation omitted). The absence or presence of

objections cannot reasonably give rise questions of impartiality because the decision whether to object is strategic in nature and does not concern the court's personal knowledge or relationships.

Brodie asserts that the Court's bias is demonstrated by the Court's comment that Brodie was the "biggest celebrator of violence on FaceBook," ECF No. 1-2 at 77, the longer sentence that Brodie is serving (as compared to his co-defendants), *id*. at 77, 80-83, and the denial of his motion for compassionate release. *Id*. at 78. "Any opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal bias and prejudice required to disqualify a judge[.]" *Mirra v. United States*, 379 F.2d 782, 787–88 (2d Cir. 1967). Brodie does not raise any evidence that the Court harbors "an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute" that would reasonably call the Court's impartiality into question. *Liteky v. United States*, 510 U.S. 540, 558 (1994). Brodie's claim that the court was biased against Brodie is meritless.

### C.    Failure to Disclose Favorable Evidence

Brodie's third claim is that the Government failed to disclose medical records and ballistic evidence from the Marquise Freeman and Terrence Lee shootings. ECF No. 1 at 7. Brodie does not provide any detail to support this claim. Without detail or supporting evidence, his assertion is conclusory. "Conclusory allegations, however, are insufficient to establish materiality." *United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004).

The Government contends that "extensive discovery materials [were] provided regarding the attempted murder of Mr. Freeman and Mr. Lee and the extent of their injuries." ECF No. 5 at 22. The Government's assertion is supported by the ballistic evidence and victim injuries described in the final presentence report. *U.S.A. v. Brodie*, 17-cr-171, ECF No. 451 at 9-22.

Brodie does not indicate what ballistic evidence is missing or how it would have augmented the ballistic evidence that was disclosed. Similarly, he fails to indicate which medical records are missing and does not assert what those records may have disclosed. "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987). Even if there had been a non-disclosure, Brodie has not demonstrated that it prejudiced him. Brodie's claim does not proffer evidence sufficient to allow the court to determine whether there was a non-disclosure or if he was prejudiced. Brodie's failure to disclose claim is meritless.

### D.    Request for Hearing

Section 2255 requires a hearing to resolve disputed issues of fact "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir.2009). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

As discussed above, Brodie's motion to vacate his conviction relies on vague and conclusory assertions to allege his claims. Indeed, Brodie has not added anything to or pointed to any evidence in the record that supports his claims. He has not shown that a hearing would yield evidence not already in the record. In the absence of supporting facts, the request for hearing is denied.

## IV.    CONCLUSION

For the reasons above, I deny the Motion to Vacate, Set Aside or Correct Sentence. (ECF No. 1).

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
         May 16, 2025